UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
EDGAR BAYAS,

       Plaintiff,

   v.

CITY OF NEW YORK,

       Defendant.
----------------------------------------------------X

11 CV 5266 (SJ) (LB)

MEMORANDUM
AND ORDER

A P P E A R A N C E S
THE SANDERS FIRM
1140 Avenue of the Americas
9th Floor
New York, NY 10036
By:   Eric Sanders
*Attorney for Plaintiff*

MICHAEL A. CARDOZO
Corporation Counsel of the City
of New York
100 Church Street, Room 2-144
New York, NY 10007
By:   Daniel Gomez-Sanchez
*Attorney for Defendant*

JOHNSON, Senior District Judge:

      The following facts are taken as alleged in the complaint ("Complaint"). Plaintiff Edgar Bayas ("Plaintiff" or "Bayas") is a Hispanic retired police officer with the New York City Police Department ("NYPD"). In March 2001, he was

transferred to the Organized Crime Control Bureau's Narcotics Division in Queens, where he worked as an undercover officer. In August of 2002, he was promoted to Detective Third Grade, the highest position he attained in the department.

In July 2007, he requested and was granted a mutual transfer to Narcotics Brooklyn South ("Brooklyn South"). Unbeknownst to Bayas, Brooklyn South was the target of an investigation being conducted by the Internal Affairs Bureau ("IAB"), the entity charged with the duty of investigating police corruption. Several officers in Brooklyn South were being wiretapped after allegations surfaced regarding wide scale "flaking" (the planting of drugs on people, distribution of drugs to informants, theft of drug money, and the like). In particular, then-Detective Jerry Bowens ("Bowens") was being targeted.

Bowens allegedly approached Bayas soon after the transfer and asked "Are you IAB?" Plaintiff claims he denied being in IAB or a part of the investigation of Bowens but that Bowens did not believe him.

Plaintiff claims that in January of 2008, IAB detectives arrived at his home, "had a brief conversation on their cellular phone" and "then he was placed on Modified Assignment" and transferred to Manhattan Central Booking. Plaintiff was not given a reason why he was transferred.

Plaintiff claims he was again questioned by IAB. This time, he was asked whether he knew anything about any guns having been removed from Bowens' locker. This followed an incident in which two detectives were suspended for 30

2

P-049

days after it was discovered that they had removed guns from Bowens' locker in order to obstruct the investigation.

Plaintiff claims that another detective assigned to Brooklyn South called him while he was on vacation and told him to be careful because "[Bowens] hates you. He thinks that you are IAB and he has a hit list with names on it." Plaintiff claims that IAB never notified the Threat Assessment Unit of this information, although he does not claim to have communicated this information to IAB.

In February 2009, Bowens pled guilty to various offenses and agreed to testify against other corrupt officers. On March 8, 2009, Bowens shot and killed his former girlfriend and injured her former friend in a separate shooting.

In October 2009, Plaintiff was restored back to Full Duty, but then was demoted from Detective Third Grade to Specialist and then to patrol in the 7th precinct. Soon after, he sustained a severe line of duty injury and missed over a year of work. He was approved for an accidental disability pension on December 10, 2010. He retired in March 2011.

Plaintiff claims he was unfairly targeted, demoted and transferred and that similarly situated white offers were not demoted or transferred without proof of misconduct. He also complains that he was neither promoted to Detective Second Grade nor Detective First Grade. He claims that even though he and other Hispanic

officers performed well, white officers received better assignments and overtime, and were promoted more often. Defendant City of New York moves to dismiss.

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, the Complaint "does not need detailed factual allegations" but must "provide the grounds of . . . entitlement to relief" with "more than labels and conclusions." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). The grounds for relief must be plausible. See 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal v. Ashcroft, 556 U.S. 662, 678 (2009) (quoting Twombly); see also Twombly, 550 U.S. 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.") (citation omitted). Bald assertions are insufficient to state a claim under this standard. See 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," including those "couched as factual allegation[s].")

In this case, Plaintiff invokes several federal anti-discrimination statutes, all of which require a showing of discrimination on the basis of a status deemed


officers performed well, white officers received better assignments and overtime, and were promoted more often. Defendant City of New York moves to dismiss.

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, the Complaint "does not need detailed factual allegations" but must "provide the grounds of . . . entitlement to relief" with "more than labels and conclusions." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). The grounds for relief must be plausible. See 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal v. Ashcroft, 556 U.S. 662, 678 (2009) (quoting Twombly); see also Twombly, 550 U.S. 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.") (citation omitted). Bald assertions are insufficient to state a claim under this standard. See 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," including those "couched as factual allegation[s].")

In this case, Plaintiff invokes several federal anti-discrimination statutes, all of which require a showing of discrimination on the basis of a status deemed

P-049

protected, in this case, race or national origin.[1]  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) (setting forth prima facie elements of a Title VII discrimination claim); Ruiz v. County of Rockland, 609 F.3d 486 (2d Cir. 2010) (applying same to claims brought pursuant to 42 U.S.C. §§ 1981 and 1983).  The McDonnell Douglas test requires Plaintiff to offer evidence that he (1) is a member of a protected group; (2) is qualified for the position or performing satisfactorily; (3) suffered an adverse employment action; and (4) did so under circumstances from which an inference of discrimination can be drawn.  411 U.S. at 802; see also Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003).

"The prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510 (2002); see also Boykin v. Keycorp, 521 F.3d 202, 212 (2d Cir. 2008); Russell v. Aid to Developmentally Disabled, Inc., 2013 WL 633573, at *9 (E.D.N.Y. Feb. 20, 2013).  Pleadings-wise, a complaint must only provide both a "short plain statement of the grounds for relief," as required by Federal Rule 8(a), and state facts sufficient to "raise a right to relief above the speculative level." Fed. R. Civ. P. 8(a); Twombley, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, 235-6 (3d Ed. 2004)).  In the absence of a Rule 8(a) objection to the Complaint, as is the case herein, it is the Iqbal plausibility standard that determines whether the Complaint states anything more

---

[1] The Complaint includes (but Plaintiff later withdrew) a Monell claim.

5

than a mere possibility of discrimination. Cf. DeFranco v. Ametek Ameron, LLC, 2013 WL 992287, at *4 (E.D.N.Y. Mar. 13, 2013) ("[T]he claim must be facially plausible and must give fair notice to the defendants of the basis for the claim") (collecting cases). This Court finds that the Complaint does not.

Plaintiff's most relevant allegations are as follows: (1) while he was assigned to Narcotics Borough Queens, he and other Hispanic officers "noticed" Caucasian officers being treated better than Hispanic officers; (2) he was accused by Bowens of having transferred to Brooklyn South for the purpose of assisting in IAB's investigation of Bowens; (3) he was placed on Modified Duty and transferred after an incident in which officers from IAB appeared at his home; and (4) he was demoted from Detective Third Grade to Specialist and then transferred to a patrol assignment. Only the first of these allegations touches on the issue of race, and in that case barely so. See Ahmed v. Gateway Group One, 2012 WL 1980386, at *2 (E.D.N.Y. Jun. 1, 2012) (dismissing discrimination claims where plaintiff's claims were premised on her being the only female Bangladeshi employee because she failed to "connect the dots" between the adverse actions and her membership in a protected class) (citing Acosta v. City of New York, 2012 WL 1506954, at *12 (S.D.N.Y. Apr. 26, 2012)).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. 678 (quoting Twombly, 550 U.S. at 557).

In this case, the allegations are less than consistent: Bayas claims that Hispanic officers in Narcotics Borough Queens are treated better than their white counterparts, but all of the actions he claims to have suffered occurred after he was transferred to Brooklyn South. He does not explain how what he conclusorily "noticed" about white officers in Queens is related to his experience in Brooklyn. He also fails to identify any member of IAB or anyone in a supervisory capacity who could have brought about his removal from Full Duty, transfer to Central Booking, or demotion from Detective to Specialist. See, e.g., Douglas v. Town of Hartford, 542 F. Supp. 1267, 1270 (D. Conn. 1982) (dismissing claim against John Doe police officers because "[p]laintiffs in civil rights actions are expected to conduct some preliminary investigation to determine the legal basis, if any, for an action against a particular person or entity").

Taken together, Plaintiff's allegations make little sense. By alleging that he was told that he is on Bowens' "hit list," he implies that Bowens is responsible for the "racially biased investigation" of the IAB. However, even if Bowens (the actual target of the investigation) was somehow in a position to finger Bayas as a culprit, the reason behind Bowens' behavior would not be the fact that Bayas is Hispanic but rather the belief that Bayas was some kind of so-called "snitch." Moreover, if Bowens managed to convince anyone in a supervisory position that Bayas was guilty of corruption, any disciplinary action taken by that individual would also fail to be discriminatory. If we are instead to infer that IAB

P-049

independently took action against Bayas, the Complaint is still wanting for individual actors and an inference of discrimination. Plaintiff cannot capitalize on a departmental scandal by loosely painting a picture of his proximity to the players and blaming one or all of them for what he doesn't like about his job. Not every unfortunate workplace incident in actionable. And while the climate at Brooklyn South was far from ideal at the time in question, Plaintiff has not stated a plausible claim that his negative experiences were tied to the federal statutes he invokes. Therefore, the Complaint is hereby dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's §§ 1981 and 1983 claims are dismissed. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. The Clerk of the Court is directed to close the case.

**SO ORDERED.**

Dated: July 18, 2013
Brooklyn, New York

_____
Sterling Johnson, Jr., U.S.D.J.

8